UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**IESHA WOODFAULK,**         **CASE NO.: 5:21-cv-102-TKW-MJF**
                             **FLA BAR NO.: 0539211**
   **Plaintiff,**

v.

**TRANE U.S. INC. and INGERSOLL-RAND COMPANY,**

   **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, IESHA WOODFAULK, hereby sues Defendants, TRANE U.S. INC. and INGERSOLL-RAND COMPANY, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under 42 U.S.C. §1981, et seq., as amended.

2. This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, IESHA WOODFAULK, has been a resident of the State of Florida and was employed by Defendants. Plaintiff is a member of a protected class due to her race (black) and due to the fact she opposed unlawful employment practices and was retaliated against for doing so.

4. At all times pertinent hereto, Defendant, TRANE U.S. INC., (hereinafter "TRANE") has been organized and existing and/or operating for purposes of this case under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the law identified above. Defendant was Plaintiff's employer as it relates to these claims.

5. At all times pertinent hereto, Defendant, INGERSOLL-RAND COMPANY, ("IR") has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a black female, began her employment with Defendants on or about June 3, 2012 and held the position of Supplier Quality Technician at the time of her wrongful termination on December 14, 2018.

7. Defendants jointly employ Plaintiff as they both control aspects of the employment relationship and are inextricably intertwined. Defendants' supervisory employees include both Defendants in their e-mail signatures. Plaintiff complained to management of both entities and agents of both responded. No one from Trane ever claimed that Trane was not an employer or did not employer her, or could not resolve her problems, and the same holds true of agents of IR. Plaintiff's paystubs

and W-2 list both Defendants. Both Defendants retained authority control over tasks assigned, position descriptions, performance evaluations, and HR duties. In all respects relating to Plaintiff's employment, Defendants are one and the same.

8. Despite her stellar work performance during her employment with Defendants, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her race (black), and because she reported Defendants' unlawful employment activities and was subject to retaliation thereafter.

9. The disparate treatment and retaliation came at the hands of specifically but not limited to Quality Manager Tony Schmaltz, a white male; Quality Manager Kyle Anderson, a white male; and HR Manager Sue Sherbert, a white female.

10. In or around March 2018, Defendants' previous Quality Manager, Brigitte Henderson left her employment after working for Defendants for over ten (10) years. Plaintiff had been working under manager Henderson for multiple years and was familiar with the position requirements.

11. Defendants tapped Dianna Urrea to be interim Quality Manager until they could find a replacement for Manager Henderson.

12. In August 2018, Defendants hired Tony Schmaltz as the new Quality Manager. Defendants instructed Plaintiff to work with him and train him because of her familiarity with the job duties required of a Quality Manager.

13. On August 20, 2018, when Manager Anderson introduced Manager Schmaltz to Plaintiff, he commented that he allowed the employees to frost the windows of the cage where Plaintiff performed most of her duties so she and the other employees would not "look like a bunch of rats in cage."

14. Plaintiff trained Manager Schmaltz on top of her normal workload and often stayed late to get caught up on her own tasks which were delayed because of training Schmaltz.

15. In October 2018, the atmosphere changed and Manager Schmaltz's attitude toward Plaintiff began to sour. He and Manager Anderson began to micromanage Plaintiff, became very argumentative, and treated her less favorably than other similarly situated employees who were white or male.

16. For example, Manager Schmaltz began timing Plaintiff's bathroom breaks, which he did not do for any of the white male employees.

17. Plaintiff complained to Manager Schmaltz and asked why his attitude toward her had changed. She was told Manager Anderson had met with him and instructed him to be stricter with Plaintiff. Plaintiff observed in the workplace that Defendants treated Plaintiff less favorably, and held her to different, tougher

standards than whites. In other words, Plaintiff observed Schmaltz's treatment of white employees personally and sufficiently for Plaintiff to have a well-formed and founded opinion that white employees were not treated in a harsher and stricter manner manner. Put still another way, Plaintiff personally observed that the terms and conditions of her employment were different from, and less favorable as compared to, whites.

18. Thereafter, Plaintiff met with Manager Anderson to voice her concerns. During the meeting, Anderson denied making the comment that she was difficult to work with but said that he told Anderson that Plaintiff was a "beautiful nightmare." Plaintiff explained to Anderson that his comments and his behaviors were very inappropriate, unprofessional, and made her uncomfortable.

19. Over time, Defendants increased Plaintiff's job duties. Defendants switched Plaintiff's job title from Quality Technician to Supplier Quality Technician and added a significant number of duties to her job description.

20. Plaintiff set a meeting with Managers Schmaltz (whose email signature block identifies him as an employee of "Trane – Ingersol Rand") and Anderson (whose email address ends in the domain *.irco.com*, for Ingersol Rand Co.)where she complained about the increased duties. She asked why her job description (and Plaintiff has various job descriptions bearing the corporate name of each Defendant)

was suddenly changing when her duties had not been significantly changed prior to and for the entire time she had been employed with Defendants.

21. Defendants took no corrective action to address her concerns. In the meeting, the managers told Plaintiff that they were adding the duties to her job but refused to tell her why, and tried to have her sign the new position description under threat of termination for insubordination if she refused. Plaintiff tried to explain that her current job duties were all that she could handle, particularly given the lack of help from Manager Schmaltz and refused to sign the new job description.

22. Plaintiff knew that Manager Anderson's wife worked in the HR department and feared that he would know if she went to HR through his wife because he threatened her that if she went to HR, she would be terminated anyway.

23. On November 30, 2018, Plaintiff filed an ethical business practices complaint using Defendants' Ethics Point system and requested guidance from the company on how to proceed but she did not receive the requested guidance. The website, irco.ethicspointvp.com, bears the common abbreviation for Ingersol Rand and informed at the bottom that Ingersol Rand takes employee complaints seriously.

24. On December 4, 2018, HR Manager Sue Sherbert became involved and tried to coerce Plaintiff into signing the new job description. She demeaned Plaintiff, yelled at her several times, and told her that Manager Schmaltz could change Plaintiff's duties without her consent. Plaintiff observed Sherbert's treatment of

white employees personally and sufficiently for Plaintiff to have a well-formed and founded opinion that white employees were not treated in a demeaning manner.

25. Plaintiff reported Managers Schmaltz's, Anderson's, and Sherbert's mistreatment to Defendants' complaint hotline on multiple occasions with no corrective action taken. In fact, after complaining to the hotline, the mistreatment intensified.

26. For example, Manager Schmaltz started harassing Plaintiff more outwardly including but not limited to following her to the bathroom, recruiting employee Kenneth l/n/u to watch Plaintiff and report back to him, nitpicking Plaintiff's e-mails by criticizing her for minor typos which he did not do for other employees, and sending her an absurd number of e-mails.

27. On December 14, 2018, Plaintiff filed another Ethics Point complaint detailing the retaliation through increased harassment, particularly by Manager Schmaltz. She explained that his constant nitpicking was beginning to interfere with her ability to do her job, causing her a great deal of stress, and was negatively impact her health and pregnancy. She was extremely worried about the impact the stress could have on her unborn child.

28. On December 14, 2018, Plaintiff was constructively discharged. She received no help after reporting the abuse that was adversely affecting both she and her unborn child.

29. Plaintiff was replaced by a white male.

30. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

31. Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32. This is an action against Defendants for discrimination based upon race brought under 42 U.S.C. §1981.

29. Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

30. Defendants are liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendants

knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

31. Defendants' known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

32. In essence, the actions of agents of Defendants, which were each condoned and ratified by Defendants, were of a race-based nature and in violation of the laws set forth herein.

33. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendants.  The events set forth herein lead, at least in part, to Plaintiff's forced resignation.

34. Defendants' conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes.

35. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in

the past and are continuing. Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT II
## RETALIATION

36. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

37. Defendants are employers as that term is used under the applicable statute referenced above.

38. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her.

39. The foregoing unlawful actions by Defendants were purposeful.

40. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendants and was the victim of retaliation thereafter, as related in part above.

41. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

42. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing.  Plaintiff is entitled to punitive damages and to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement and credit for all lost benefits.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 2d day of June 2021.

                Respectfully submitted,

                /s/ Jim Garrity
                Jim Garrity [FBN 0539211]
                MARIE A. MATTOX, P. A.
                203 North Gadsden Street
                Tallahassee, FL 32301
                Telephone:  (850) 383-4800
                Facsimile:   (850) 383-4801
                Jim@JimGarrityLaw.com
                Secondary email:
                Elizabeth@mattoxlaw.com